THE LEGAL AID SOCIETY
Seymour W. James, Jr., Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Director, Employment Law Unit
Young Woo Lee, Supervising Attorney
Sumani Lanka, Staff Attorney
199 Water Street, 3rd Floor
New York, New York 10038
Telephone: (212) 577-3589
SVLanka@legal-aid.org

SUSMAN GODFREY L.L.P.
Arun Subramanian
Lucas E. Issacharoff
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Email: lissacharoff@susmangodfrey.com

*Attorneys for Plaintiff Crystal Santana*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRYSTAL SANTANA,<br><br>                               Plaintiff,<br><br>   vs.<br><br>DOMINO'S PIZZA, INC., and<br>DOMINO'S PIZZA LLC,<br><br>                               Defendants. | Civil Docket No. 17 Civ. 8079<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through her attorneys, The Legal Aid Society and Susman Godfrey L.L.P., alleges and states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Crystal Santana brings this action against Defendants Domino's Pizza, Inc. and Domino's Pizza LLC (together, "Domino's") for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., for denying her wages due and retaliating against her in violation of the New York Labor Law ("NYLL"), and for breach of contract and the implied covenant of good faith and fair dealing.

2. Defendants Domino's hired Ms. Santana on or about October 19, 2013, as a Customer Service Representative ("CSR") at Store No. 3662, located at 2463 Webster Ave., Bronx, NY. In or around February 2014, Ms. Santana began a managerial training program that Defendants said would be accompanied by a promotion to crew chief and, with subsequent promotions, an increase in pay and benefits. While she received the promotions and increased responsibility, Ms. Santana never received either the additional pay she was entitled to or the benefits, including health insurance and paid maternity leave.

3. Following Ms. Santana's subsequent promotion to Level 2 Assistant Manager, she continued to be forced to log in as a CSR and did not receive the promised pay increase. Ms. Santana was entitled to a promotion to Level 3 Assistant Manager no later than on or about June 2014, which should have made her eligible for benefits, including health insurance and paid maternity leave, no later than September 2014. Defendants willfully denied Ms. Santana her entitlement to the agreed upon wages and benefits, including health benefits, associated with her promotions in violation of her contract and the New York Labor Law.

4.      Before Ms. Santana became a Level 3 Assistant Manager, she informed Domino's that she was pregnant, and requested help with cleaning the store and other tasks as an accommodation for her pregnancy.  This requested accommodation was reasonable and would not have placed undue burden on Domino's.

5.      Defendants ignored Ms. Santana's request for additional help with cleaning and other tasks.  Instead, in or around September 2014, Domino's transferred Ms. Santana to Store No. 3537, located at 3869 White Plains Road, Bronx, NY, which Domino's promised had a lower volume of customers.  Ms. Santana continued not to be paid at the agreed-upon wage, and on at least two occasions was forced to work off-the-clock when the payroll system misstated her hours.

6.      Despite the supposedly lower volume, Domino's forced Ms. Santana to work unreasonable hours, particularly given her pregnancy.  Ms. Santana complained of adverse health consequences from these working conditions and requesting relief from Domino's.  Instead of accommodating her reasonable request, Defendants gave Ms. Santana no choice but to take unpaid maternity leave beginning October 6, 2014.  Ms. Santana had intended to begin her maternity leave no earlier than October 20, 2014, because this is when she would be eligible for FMLA leave.

7.      Ms. Santana gave birth on October 25, 2014 and she requested FMLA leave after that date. On November 21, 2014, Domino's rejected her request for FMLA leave, giving as a reason that she had only been employed for 9 months.  This was a willful and knowing falsehood designed to willfully and knowingly deny Ms. Santana her entitlement to the protections of the FMLA.

8. Rather than approve the 12 weeks of FMLA leave that Ms. Santana was entitled to, Domino's approved an unpaid leave period of 8 weeks. Upon expiration of this leave, Ms. Santana attempted to return to work as a Level 3 Assistant Manager. Defendants prevented her from doing, repeatedly refusing to acknowledge that she became a Level 3 Assistant Manager by the end of June 2014 and that she was entitled to additional pay and benefits. Defendants also refused to process the medical forms she had submitted.

9. Defendants further attempted to prevent Ms. Santana's return to work on the basis of her sex and maternity, with their manager calling her a "little girl" and telling her to stay home to take care of her children.

10. Domino's eventually fired Ms. Santana on April 23, 2015.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over each of plaintiff's claims pursuant to 28 U.S.C. § 1332(a). The parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

12. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) as this action arose, in substantial part, within the Southern District of New York, where the unlawful employment practices alleged herein occurred.

## PARTIES

13. Plaintiff Crystal Santana is an individual who currently, and at all times relevant to this Complaint, resides in the Bronx in the State of New York. She is an individual who had worked for Domino's, an employer within the meaning of the FMLA, for 12 months as of October 19, 2014, by which time she had worked more than 1,250 hours in the preceding 12 months. She was therefore entitled to leave on the basis of her pregnancy and the accompanying

protections of the FMLA. Until the termination of her employment on April 23, 2015, Ms. Santana was an "employee" of Defendant Domino's within the meaning of the FMLA and NYLL.

14. Defendant Domino's Pizza, Inc. is a corporation registered in Delaware with its principal place of business in Michigan. Upon information and belief, it employs over 50 full-time employees within 75 miles of both the Webster Avenue and White Plains Road stores, both of which are owned, directly or through subsidiaries, by Domino's Pizza, Inc. Defendant Domino's Pizza, Inc. is an "employer" within the meaning of the FMLA and NYLL.

15. Defendant Domino's Pizza LLC is a wholly owned subsidiary of Defendant Domino's Pizza, Inc. registered in Michigan with its principal place of business in Michigan. Upon information and belief, it employs over 50 full-time employees within 75 miles of both the Webster Avenue and White Plains Road stores. Defendant Domino's Pizza LLC is an "employer" within the meaning of the FMLA and NYLL.

## FACTUAL ALLEGATIONS

16. Defendant Domino's hired Ms. Santana on or about October 19, 2013, as a Customer Service Representative ("CSR") at Store No. 3662, located at 2463 Webster Ave., Bronx, NY.

17. As a CSR, Ms. Santana's duties included, but were not limited to, receiving and processing customers' orders and assisting the manager with various responsibilities. She usually worked the night shift, beginning between 3:00 PM and 5:00 PM and ending between 10:00 PM and 12:00 AM. During her time as a CSR, she usually worked with one Assistant Manager and two drivers, allowing both her and the Assistant Manager to take breaks periodically.

18. In or around February 2014, Ms. Santana began a managerial training program that was supposed to be accompanied by a promotion to crew chief and, upon subsequent promotions that accompanied the program, receipt of additional pay and benefits. However, while she received the promotions and increased responsibility, she did not receive the pay increase. Defendants said there was an issue due to "computer problems."

19. In or around March 2014, Ms. Santana completed the training program and was subsequently promoted to Level 2 AM in or around April 2014, and promoted to Level 3 AM in or around June 2014.

20. As of at least April 30, 2014, Ms. Santana was entitled to the higher wages due to a Level 2 Assistant Manager.

21. In or around May 2014, Ms. Santana informed her General Manager Hector Serrano and other Domino's management that she was pregnant.

22. As of at least June 30, 2014, Ms. Santana was entitled to the higher wages and the benefits due to a Level 3 Assistant Manager, including health insurance and paid maternity leave. These benefits would have been activated no later than September 28, 2014.

23. Following these promotions, Ms. Santana continued to log in and be paid at the lower wage due to a CSR, but was tasked with increased responsibilities.

24. Following her promotion to Level 2 and Level 3 AM (while still being paid as a CSR and not receiving benefits), Ms. Santana frequently had to carry out all of the Webster Ave. branch's responsibilities, including cooking and opening the store in addition to her previous responsibilities as CSR. Plaintiff also had to single-handedly keep the store clean– no small job given the branch's frequent unsanitary conditions, including rodents and other pests.

25. Due to her pregnancy, Ms. Santana requested a reasonable accommodation: that another person be assigned to her shifts to help with cleaning the store and assisting in other tasks – just as she had been paired with an assistant manager when she was a CSR.

26. Defendants' managers and supervisors refused, telling Ms. Santana that she "wasn't doing anything," that it "wasn't necessary," and that "it's slow in the mornings."

27. Ms. Santana continued to press for an accommodation, but Defendants continually ignored or refused her request for assistance. Instead, in or around September 2014, Defendants transferred Ms. Santana to Store No. 3537, located at 3869 White Plains Road, Bronx, NY, which Defendants said had lower volume.

28. Defendants still required Ms. Santana to work unreasonable hours given her pregnancy.

29. On at least two occasions at the White Plains Road branch, Ms. Santana was not paid for hours worked *at all* – let alone at the wage to which she was entitled – and registered complaints within the payroll system.

30. While Ms. Santana was primarily on the night shift, generally working from between 3:00 PM and 5:00 PM until between 10:00 PM and 12:00 AM, she was occasionally assigned to mornings, and on more than one occasion worked a morning shift immediately following a night shift. Ms. Santana was also frequently forced to work without breaks due to the failure to appropriately staff the store even under Domino's own policies, let alone given Ms. Santana's pregnancy and request for accommodation.

31. On one such occasion, Defendants required Ms. Santana to work from 5:30 PM on October 3, 2014, to 1:00 AM on October 4, and then to reopen the store at 8:30 AM on October 4 and work until 3:30 PM that day. Ms. Santana experienced high stress and stomach

pains from this episode as well as her overall work experience, and complained of her health to Defendants on October 4.  In response, Defendants told her to go home.

32.     The following day, October 5, 2014, Ms. Santana again requested additional help from Defendants.  Instead of offering the accommodation, Defendants told Ms. Santana to take maternity leave immediately instead.  Although Ms. Santana expressed a desire to keep working until her original leave date of October 20, Defendants placed her on leave effective October 6 and told her she could not return to work until she had a doctor's note indicating her ability to do so.

33.     Ms. Santana was not able to obtain such a note until October 23, 2014, but as she gave birth on October 25, 2014, she did not return to work before giving birth.

34.     During her maternity leave, Domino's refused to grant Ms. Santana either the continuation of benefits to which she was entitled under the FMLA or the contractual benefits due to a Level 3 Assistant Manager, including paid leave.

35.     Prior to the end of her originally scheduled medical leave, on or around November 21, 2014, Ms. Santana attempted to fill out the paperwork necessary to classify her leave as FMLA leave, to change the leave to paid leave pursuant to the benefits afforded to Assistant Managers, and to return to work.

36.     Domino's informed Ms. Santana that she was ineligible for FMLA leave because she had only been employed for 9 months before her leave.  Ms. Santana, however, had been employed for 12 months as of October 19, 2014, a fact that Domino's was or should have been aware of.

37.     Ms. Santana repeatedly contacted Defendants' PeopleFirst Department about both her position as a Level 3 Assistant Manager and her eligibility for FMLA benefits, but was

repeatedly denied.  In one call the PeopleFirst representative told Ms. Santana that, while she could *return* to work as a Level 3 Assistant Manager, she was not entitled to retroactive recognition of the work she had been performing or the accompanying back pay and benefits. PeopleFirst representatives also called Ms. Santana a "little girl" and told her she "needed to stay home to take care of her kids."

38. Due to Domino's willful denial of her FMLA-eligible status, Ms. Santana was denied her statutory entitlements.

39. After several months of Ms. Santana attempting to return to work at the Assistant Manager position, Domino's fired Ms. Santana on April 23, 2015.

40. Ms. Santana timely filed a complaint with the New York City Commission on Human Rights on or about July 27, 2015 asserting discrimination and retaliation claims on the basis of sex and pregnancy and failure to reasonably accommodate her pregnancy. The New York City Commission on Human Rights cross-filed the complaint with the Equal Employment Opportunity Commission.  Those close claims are currently pending.

## FIRST COUNT

### Interference in Violation of the Family and Medical Leave Act
### (29 U.S.C. § 2601 et seq.)

41. Ms. Santana incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

42. Defendants employ over 50 full-time employees within 75 miles of both the Webster Avenue and White Plains Road stores. Plaintiff began employment with Defendants on or about October 19, 2013 and was fired on or about April 23, 2015.

43. Ms. Santana was pregnant from in or about February 2015 to October 25, 2015, entitling her to the protections of the FMLA.

44. Defendants interfered with Ms. Santana's right to take FMLA leave by denying her eligibility through willfully false representations about her employment history.

45. Defendants illegally terminated Ms. Santana's employment when they fired her because she took FMLA leave to attend to her pregnancy and attempted to claim the benefits she was entitled to.

46. As a result of Defendants' unlawful acts, Ms. Santana suffered damages including past and future lost wages and benefits, and the costs of bringing this action. 29 U.S.C. § 2617(a)(1)(A)(i); 29 U.S.C. § 2617(a)(3).

47. Defendants willfully violated Ms. Santana's rights under the FMLA and, as a result, are liable for actual damages, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii) in an amount equal to her actual damages, reasonable costs and attorneys' fees, pre- and post-judgment interest, and any other remedies the Court deems appropriate.

## SECOND COUNT

**Retaliation in Violation of the Family and Medical Leave Act**
**(29 U.S.C. § 2601 et seq.)**

48. Ms. Santana incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

49. Defendants retaliated against Ms. Santana for taking leave by terminating her employment.

50. Defendants acted willfully in retaliating against Ms. Santana for exercising her FMLA rights.

51. As a result of Defendants' unlawful acts, Ms. Santana suffered damages including past and future lost wages and benefits, and the costs of bringing this action.

52. Because Defendants willfully violated Ms. Santana's rights under the FMLA, they are liable for actual damages, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii) in an amount equal to her actual damages, reasonable costs and attorneys' fees, pre- and post-judgment interest, and any other remedies the Court deems appropriate.

## THIRD COUNT

### Unpaid Wages in Violation of Article 6 of the New York Labor Law

53. Plaintiff realleges and reincorporates each and every allegation contained in all preceding paragraphs as if fully set forth herein.

54. Defendants violated NYLL § 191 by not paying Plaintiff paying agreed upon wages.

55. From at least April 30, 2014, through October 6, 2014, Plaintiff was due the higher wages owed to a Level 2 Assistant Manager, but was paid only at the CSR rate.

56. From at least June 30, 2014, to October 6, 2014, Plaintiff was due the higher wages owed to a Level 3 Assistant Manager, but was paid only at the CSR rate and received no benefits.

57. From at least September 28, 2014, until her termination, Plaintiff was entitled to the benefits owed to a Level 3 Assistant Manager, but received no such benefits.

58. Plaintiff repeatedly informed Defendants of their failure to give her access to her full wages and benefits.

59. Defendants willfully failed to pay Plaintiff the full amount she was entitled to.

60. As a result of Defendants' unlawful actions, Plaintiff suffered lost wages, lost benefits, and the costs of bringing this action.

61. Defendant is therefore entitled to lost wages in an amount to be calculated based upon Defendants' records of the pay due to crew chiefs, Level 1 AMs, and Level 2 AMs.

62. Defendant is further entitled to liquidated damages in the amount of 100% of lost wages, costs, attorneys' fees, and pre- and post-judgment interest, as well as any other relief the Court deems appropriate.

## FOURTH COUNT

### Off-the-Clock Work in Violation of Article 6 of the New York Labor Law

63. Plaintiff realleges and reincorporates each and every allegation contained in all preceding paragraphs as if fully set forth herein.

64. Defendants violated NYLL §§ 191 and 195(3) by not paying providing Plaintiff with an *accurate* statement of the number of regular hours worked or paying her for the missing hours.

65. Plaintiff repeatedly informed Defendants of this omission.

66. Defendants willfully failed to pay Plaintiff the full amount she was entitled to.

67. As a result of Defendants' unlawful actions, Plaintiff suffered lost wages, lost benefits, and the costs of bringing this action.

68. Defendant is therefore entitled to lost wages.

69. Defendant is further entitled to liquidated damages in the amount of 100% of lost wages, costs, attorneys' fees, and pre- and post-judgment interest, as well as any other relief the Court deems appropriate.

## FIFTH COUNT

### Retaliation in Violation of New York Labor Law § 215

70. Plaintiff realleges and reincorporates each and every allegation contained in all preceding paragraphs as if fully set forth herein.

71. Plaintiff repeatedly requested and was denied the wages and benefits due to her following her promotions.

72. Due to her refusal to give up her entitlement to the wages and benefits due, Plaintiff was prohibited from returning to work and fired in violation of New York Labor Law § 215.

73. Plaintiff suffered lost future wages and benefits, as well as significant emotional distress and the costs of brining this action.

74. Plaintiff is therefore entitled to liquidated damages in the amount of $20,000, costs, reasonable attorneys' fees, and reinstatement, as well as any other relief the Court deems appropriate.

## SIXTH COUNT

### Breach of Express and Implied Contract

75. Plaintiff realleges and reincorporates each and every allegation contained in all preceding paragraphs as if fully set forth herein.

76. Plaintiff entered the managerial training program on the understanding that, upon the completion of certain benchmarks, she would receive promotions that would be accompanied by increases in pay and/or benefits.

77. Plaintiff fulfilled all of the conditions of the training program, obtained necessary qualifications, and performed higher-value work for Defendants, thus providing good and valuable consideration.

78. Despite fulfilling her end of the bargain, Plaintiff was denied the benefit of the bargain and did not receive the promised wages or benefits.

79. Plaintiff is therefore entitled to the value of the additional wages and benefits she should have received, pre- and post-judgment interest, and any other relief the Court deems appropriate.

## SEVENTH COUNT

### Breach of Implied Covenant of Good Faith and Fair Dealing

80. Plaintiff realleges and reincorporates each and every allegation contained in all preceding paragraphs as if fully set forth herein.

81. Plaintiff entered the managerial training program on the understanding that, upon the completion of certain benchmarks, she would receive promotions that would be accompanied by increases in pay and/or benefits.

82. Plaintiff fulfilled all of the conditions of the training program, obtained necessary qualifications, and performed higher-value work for Defendants, thus providing good and valuable consideration.

83. Despite Plaintiff's fulfilling her end of the bargain, Defendants repeatedly evaded Plaintiff's inquiries, claimed in bad faith that she had not fulfilled preconditions for various wages, benefits, or return to employment, belittled her, and in other ways obstructed her attempt to obtain the benefit of the bargain.

84. Defendants' actions had the effect of injuring Plaintiff's right to receive the full benefit of her contractual relationship with Defendants.

85. Defendants' failure to deal honestly with Plaintiff caused additional damages beyond those directly caused by their failure to abide by the terms of her contract during her working hours, including impeding her ability to return to work, leading to consequential damages.

86. Plaintiff is therefore entitled to the value of the future wages that she would have received as a Level 3 Assistant Manager and, shortly thereafter, a General Manager, had she not been prevented from returning to work.

87. Plaintiff is additionally entitled to pre- and post-judgment interest, and any other relief the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Declare that the acts complained of herein constitute violations of the Family Medical Leave Act, the New York Labor Law, and the express and implied terms of Plaintiff's contractual relationship with Defendants;

2. Order the Defendant to compensate Plaintiff for her damages, including her past and future loss of wages and benefits, and her past and future physical and emotional distress;

3. Enter judgment in favor of Plaintiff for such amount as may be awarded for punitive damages;

4. Award to Plaintiff liquidated damages under the Family Medical Leave Act;

5. Award to Plaintiff liquidated damages under New York Labor Law § 198 in an amount equal to 100% of her unpaid wages;

6. Award to Plaintiff liquidated damages under New York Labor Law § 215 in an amount equal to $20,000;

7. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

8. Award to Plaintiff pre- and post-judgment interest;

9. Order Plaintiff's reinstatement as a Level 3 Assistant Manager; and

10. Grant such additional or alternative relief as may appear to be this Court to be just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: New York, New York
October 19, 2017

/s/ Lucas Issacharoff

THE LEGAL AID SOCIETY
Seymour W. James, Jr., Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Director, Employment Law Unit
Young Woo Lee, Supervising Attorney
Sumani Lanka, Staff Attorney
199 Water Street, 3rd Floor
New York, New York 10038
Telephone: (212) 577-3589
SVLanka@legal-aid.org

SUSMAN GODFREY L.L.P.
Arun Subramanian
Lucas E. Issacharoff
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 729-2018
Facsimile: (212) 336-8340
ASubramanian@susmangodfrey.com
LIssacharoff@susmangodfrey.com

*Attorneys for Plaintiff*
*Crystal Santana*